IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAWN S.,[1]

           Plaintiff,

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

No. 3:23-cv-1311-YY

OPINION & ORDER

YOU, Magistrate Judge.

Plaintiff Dawn S. seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits ("DIB") and social security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33; 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 12, 2020, and SSI on August 12, 2020, alleging a disability onset date of December 10, 2015. The Commissioner denied plaintiff's claims on May 10, 2021, and again upon reconsideration on July 27, 2021. Plaintiff filed a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party and witnesses in this case.

1 – OPINION AND ORDER

written request for a hearing, and a hearing was held before Administrative Law Judge Linda Thomasson on June 9, 2022. Tr. 37–62. The ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 17-32. The Appeals Council denied plaintiff's request for review on July 18, 2023. Tr. 1–7. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 20. At step two, the ALJ found that plaintiff had the following severe, medically determinable impairments: alcohol use disorder, anxiety, depression, and a neurocognitive disorder. Tr. 20. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 21. The ALJ assessed plaintiff's residual functional capacity ("RFC"), as follows:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to occasional exposure to hazards, such as moving mechanical parts and unprotected heights. She is limited to understanding and remembering simple instructions. She is limited to simple, routine, repetitive tasks and simple work-related decisions.

Tr. 23.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 29–30. At step five, the ALJ determined that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is not disabled whether or not [she] has transferable job skills." Tr. 30. The ALJ further found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national

3 – OPINION AND ORDER

economy that plaintiff can perform, such as hand packager, cleaner II, and auto detailer. Tr. 30–31. The ALJ therefore found that plaintiff was not disabled. Tr. 31.

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to properly evaluate the medical opinion of Michael Leland, M.D., (2) erred in discounting her subjective symptom testimony, and (3) failed to properly address the lay witness testimony. Pl. Br. 6–13.

I.  Medical Opinion Evidence

　A.　Relevant Law

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–

92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839 at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

//

//

5 – OPINION AND ORDER

B.  **Dr. Michael Leland**

Dr. Leland saw plaintiff on February 3, 2021, for a neuropsychological screening evaluation. Tr. 1088. In his report, Dr. Leland provided his testing methodology, the results of all the testing he administered, a comprehensive IQ test score, and subsequent diagnoses. Tr. 1088–1098. Dr. Leland diagnosed plaintiff with an unspecified neurocognitive disorder, and observed that "her history of significant substance use likely contributes to this." Tr. 1097. Dr. Leland also noted that plaintiff experienced minor head trauma in a motor vehicle accident but suffered no reported significant cognitive residuals. *Id.* Dr. Leland further diagnosed plaintiff with a generalized anxiety disorder and provisionally diagnosed plaintiff with a panic disorder, noting that "it is less clear whether or not she experiences significant panic disorders." Tr. 1097.

The ALJ found Dr. Leland's opinion was generally consistent with plaintiff's RFC and other evidence in the record, but not fully persuasive because it contained vague language and unspecified functional limitations. Tr. 29. In particular, the ALJ found that Dr. Leland's "opinion of 'significant' difficulties in performing daily activities is non-descriptive." *Id.* Indeed, Dr. Leland did not describe plaintiff's difficulties or explain what the activities were or how exactly they would be impacted.

The ALJ also concluded that Dr. Leland's opinion "is tentative because he states 'likely impacts her ability to engage in work' rather than providing a definitive limitation." Tr. 29. Plaintiff argues that, "if the ALJ believed Dr. Leland's opinion was vague or incomplete with regard to functional restrictions, then the ALJ did have a duty to recontact Dr. Leland for clarification." Reply 3 (citing 20 C.F.R. § 404.944; *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991)).

In *Ford v. Saul*, the Ninth Circuit held that where a doctor used vague descriptors such as that the claimant's ability to perform in the workplace was "limited" or "fair" and "failed to specify [the claimant's] functional limits," "the ALJ could reasonably conclude these characterizations were inadequate for determining RFC." 950 F.3d 1141, 1156 (9th Cir. 2020). The court also rejected Ford's argument that the ALJ should have instructed the doctor to further develop the record regarding the meaning of "fair" and "limited." *Id.* The court recognized that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* (quoting *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001)); *see also* 20 C.F.R. §§ 404.1519p(b), 416.919p(b). "Given that the ALJ had years of Ford's mental health records and multiple opinions from non-examining psychiatrists to inform her decision, this duty was not triggered." *Id.* Here, too, the ALJ had years of plaintiff's medical records. The ALJ also had opinions from state agency mental consultants, and Dr. Leland provided all testing methodology, observations, and results. Under these circumstances, the duty to develop the record further was not triggered.

Lastly, the ALJ found that Dr. Leland's statement that plaintiff "would certainly benefit from have a representative payee" was "more of a recommendation rather than an opinion about the most the claimant can do." Tr. 29; *see* Tr. 1097. The ALJ reasonably concluded that Dr. Leland offered a recommendation rather than an opinion.

Plaintiff argues the ALJ erred because, although the ALJ "found, consistent with Dr. Leland's opinion, that Plaintiff has moderate limitations in <u>both</u> understanding, remembering, <u>and</u> applying information and in concentrating, persisting, and maintaining pace," the RFC does not address deficits in concentrating, persisting, and maintaining pace." Pl. Br. 7–8

7 – OPINION AND ORDER

(emphasis in original). The Commissioner counters that the ALJ's limitation to simple, routine, repetitive work can sufficiently address limitations to both understanding, remembering, or applying information, as well as concentrating, persisting, or maintaining pace. Def. Br. 6–7 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)).

In *Stubbs-Danielson*, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." 539 F.3d at 1174 (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (holding where state psychologist both identified claimant as having deficiencies of concentration, persistence, or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately captured claimant's deficiencies in concentration persistence or pace); *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (holding where ALJ' hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).

In assessing plaintiff's attention, concentration, and mental tracking, Dr. Leland administered the Trail Making Parts A and B. Tr. 1095. Plaintiff performed at or below the 10th percentile in both, and it appeared her performance was influenced by processing speed. Tr. 1094–95. To assess memory, plaintiff was administered the Wechsler Memory Scale-IV tests, in which she scored extremely low for immediate and auditory memory, borderline for delayed

8 – OPINION AND ORDER

memory, and low average for visual memory. Tr. 1095. As noted above, Dr. Leland did not provide concrete limitations.

A state psychological consultant, Sheri Tomak, Psy.D., having reviewed these results as well as other medical evidence in the record, opined that plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. Tr. 97. Dr. Tomak opined that, in the area of sustained concentration and persistence, plaintiff had no limitation in her ability to carry out very short and simple instructions, she did not need special supervision to sustain an ordinary routine, and she was only moderately limited in her ability to maintain attention and concentration for extended periods. Tr. 102. Plaintiff does not dispute Dr. Tomak's findings.[2] Plaintiff was found by state psychologist Dr. Tomak to have the ability to sustain concentration and persistence in short and simple instructions, and the ALJ's RFC limitation to short, simple, repetitive tasks adequately encapsulates both. *See Howard*, 255 F.3d at 582.

In sum, the ALJ did not err in assessing Dr. Leland's opinion.

**II.    Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to identify specific, clear and convincing reasons supported by substantial evidence to reject her subjective symptom testimony. Pl. Br. 9–11, ECF 10. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the

---

[2] The ALJ found that Dr. Tomak underestimated plaintiff's limits for understanding, remembering, and applying information, but concluded that the "remainder of her opinion is consistent with record and persuasive." Tr. 27.

9 – OPINION AND ORDER

claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At the hearing, plaintiff testified that she has been unable to work due to her anxiety, memory issues, and migraines. Tr. 48. She explained that she "struggle[s] with being around a lot of people," has attendance issues, does not drive "very much," is "barely" able to shop for groceries, suffers from lack of sleep, and cannot stay focused and on task, and her migraine medication is ineffective. Tr. 48. She testified that she stopped working because her anxiety "got bad" and she "couldn't make it in to work all the time." Tr. 47. When asked about her daily

10 – OPINION AND ORDER

routine, plaintiff described that she watches television, "might do a few chores around the house," takes a nap in the middle of the day because she gets tired easily, and will "try to go for a walk up and down the driveway to get out of the house." Tr. 48–49. Plaintiff testified that she had not been in counseling since her twenties and, while she has gotten referrals for mental health, she had not fully pursued her options. Tr. 49–50.

When asked about medications, plaintiff stated that she takes medication for anxiety, a sleep aid, and a recently-prescribed medication for depression, but did not mention any medications related to migraines. Tr. 51. She testified that her anxiety medication "takes the edge off" for a few hours but makes her tired. Tr. 55.

When asked about her good and bad days, plaintiff described that she cannot shower or leave the couch three or four days out of a week. Tr. 53. Plaintiff testified that she experiences panic attacks often and on most occasions when she has to leave the house, such as for grocery shopping. Tr. 55. Plaintiff explained that her memory issues have only existed since 2015, around her alleged onset date, and that they contributed to losing her employment. Tr. 57. She further explained that, following an MRI, her physician diagnosed her with ministrokes, she experienced these ministrokes during her last year of employment, and the ministrokes contributed to her mental impairments. Tr. 57–58.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 24. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23–24.

//

11 – OPINION AND ORDER

A.  **Objective Medical Evidence**

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

The ALJ found that, "[a]lthough the claimant alleges disability in part because of a series of mini strokes, the medical record contains no evidence of strokes." Tr. 26. The ALJ further that plaintiff "also alleges disability in part because of traumatic brain injury, but there is no evidence in the record that she suffered a traumatic brain injury." *Id.* Plaintiff argues that, "contrary to the ALJ's assertion that 'the medical record contains no evidence of strokes' or of a traumatic brain injury (Tr. 26), the record does include an MRI of Plaintiff's brain from 2016 consistent with brain damage related to a prior stroke." Pl. Br. 8 (citing Tr. 1088).

Plaintiff was treated at Kaiser medical offices in early March 2016. On March 4, 2016, plaintiff was seen for disorientation, poor short-term memory, and subacute confusion after being recently discharged for treatment for alcohol withdrawal and delirium. Tr. 530. The doctor "suspect[ed] confusion due to active alcohol use." Tr. 531l; *see also* Tr. 535 (confusion "possibly due to alcoholism?").

An MRI of the head and brain was ordered and conducted on March 7, 2016. The MRI indicated:

> 1. No acute intracranial abnormality is identified.
> 2. Large pyramidal focus of T2 signal hyperintensity within the central pons which demonstrates central signal suppression on axial T2 FLAIR sequences with a rim of peripheral hyperintensity, most compatible with sequelae of a chronic infarct. This finding is new when compared to the MR dated 2/11/2007.

12 – OPINION AND ORDER

> 3. Mild chronic microvascular ischemic disease
> 4. Mild to moderate generalized parenchymal volume loss, greater than expected for the patient's stated age

Tr. 763-64. The findings further stated:

> MRI brain: The ventricles and sulci are mildly prominent, suggestive of mild to moderate generalized parenchymal volume loss, greater than expected for the patient's stated age. There is no acute infarct or intracranial hemorrhage. A large pyramidal focus of T2 signal hyperintensity is present within the central pons which demonstrates central signal suppression on axial T2 FLAIR sequences with a rim of peripheral hyperintensity, most compatible with sequelae of a chronic infarct. This finding is new when compared to the MR dated 2/11/2007.
> Small and patchy T2 hyperintense foci within the periventricular and subcortical white matter are most suggestive of mild chronic microvascular ischemic disease. No extra-axial fluid collection, midline shift, or limits.
> The right maxillary antrum remains hypoplastic. The paranasal sinuses are otherwise well aerated.
> There is no suspicious calvarial lesion.

Tr. 762-63. Subsequent chart notes from March 11, 2016, reflect that plaintiff's primary care provider believed that the "MRI showed signs of brain damage probably due to alcohol use." Tr. 522. Plaintiff was told her memory changes might be permanent. Tr. 526.

Plaintiff contends the ALJ overlooked her MRI results and argues this "calls into question the ALJ's evaluation of all the other evidence in the record[.]" Pl. Br. 8. But the ALJ cited to Kaiser medical records from March 2016—the same set of records that contains plaintiff's MRI results. Tr. 21 (citing Ex. 2F/55, 2F/61). In fact, the ALJ cited to plaintiff's chart notes from March 11, 2016—the date on which plaintiff's MRI results were discussed with her. *Id.* (citing Ex. 2F/55). The ALJ observed these medical records indicate that plaintiff's "memory appears to have been affected potentially by excessive use of alcohol" and that her "short-term memory is poor." *Id.* Indeed, the records state that plaintiff's primary care physician believed plaintiff's "MRI showed signs of brain damage probably due to alcohol use." Tr. 522.

13 – OPINION AND ORDER

Plaintiff testified her memory issues were related to a series of ministrokes she suffered around the time she lost her job, and that she had no mental impairments prior to her alleged onset date. Tr. 57–58. Plaintiff also claimed in her function report that ministrokes and a traumatic brain injury contributed to her mental impairments. Tr. 269. However, as the ALJ observed, there is "no evidence" to support plaintiff's claims of ministrokes, traumatic brain injury, and panic attacks. Tr. 26, 27. Plaintiff argues that her 2016 MRI shows evidence of a stroke because the results indicate she had a large pyramidal focus of T2 signal hyperintensity within the central pons most compatible with sequelae of a chronic infarct, mild chronic microvascular ischemic disease, and mild to moderate generalized parenchymal volume loss greater than expected for plaintiff's age. Pl. Br. 10. Unfortunately, no doctor, not even plaintiff's treating physician, nor any consultative examiner or reviewing physician, has interpreted these records as indicating a stroke or a series of ministrokes. The same holds true for the supposed traumatic brain injury, of which there is no evidence.[3] Therefore, the ALJ did not err in discounting plaintiff's testimony pertaining to these allegations.

The ALJ also observed that plaintiff claimed she had stopped working on December 10, 2015, because of her conditions,[4] but "medical records show she was fired on December 10, 2015 for being under the influence of alcohol and having alcohol in her possession." Tr. 26 (citing Ex. 2F/52). Indeed, medical records from March 10, 2016, indicate that plaintiff "states she is here because she was fired from job/12-10-15 for being under the influence of alcohol &

---

[3] Plaintiff reported being in a motor vehicle accident in 1988 at which time she was treated for lacerations to her head and a possible concussion. Tr. 515. However, Dr. Leland concluded that
[4] At the hearing, plaintiff testified that her employer was "doing layoffs" and she lost her job because her anxiety "got too bad" and she "couldn't make it in to work all the time." Tr. 47.

14 – OPINION AND ORDER

for having alcohol in her possession." Tr. 520. This inconsistency between plaintiff's testimony and the record was a reasonable basis upon which to discount plaintiff's testimony.

Plaintiff points to a medical record from May 11, 2016, which states that her company was undergoing layoffs. Pl. Br. 11 (citing Tr. 516). But this reference to layoffs was made in the context of a statement by plaintiff's fiancé who "indicated that while the company was conducting layoffs, the loss of her job was in part due to some suspected alcohol use." Tr. 516.

Plaintiff argues the ALJ "failed to properly consider how [her] brain damage and other impairments may have impacted her understanding of her own medical history and her ability to accurately and consistently recount that history during the hearing." Pl. Br. 11. However, the ALJ's interpretation of the evidence was reasonable and therefore this court will not second guess it. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

### B.    Daily Activities

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her daily activities. Tr. 28. The ALJ is required to provide only one clear and convincing reason to discredit a claimant's testimony and has done so here, as discussed above. Therefore, it is unnecessary to reach this issue.

### III.    Lay Witness Testimony

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Where lay witness testimony does not describe any limitations not already described by the claimant, the ALJ's well-supported reasons for rejecting the claimant's testimony "apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117, 1122.

The ALJ made note of a third-party statement given by plaintiff's friend, Richard B, who stated that plaintiff's anxiety and memory issues prevent her from staying focused on simple tasks, she has poor short-term memory and retention, and she has limitations in memory, completing tasks, concentration, understanding, and following instructions. Tr. 297-304. The ALJ found Richard B.'s testimony was inconsistent with "the relatively conservative treatment and examinations of record and are therefore not persuasive." Tr. 29. For example, the ALJ noted that plaintiff's attention and concentration have been described as both adequate and good, medical records indicate she is capable of understanding, plaintiff remembers to feed her cat and change the litter box, she goes outside daily, she commutes by walking, driving, and riding with others, she can go out alone, she takes short walks daily, and she spends time with others by phone and email a few times a week. Tr. 276–79, 522, 574, 622, 1080, 1112. Therefore, the ALJ did not err in discounting the lay witness testimony.[5] *See Hernandez v. Saul*, 808 F. App'x 425, 428 (9th Cir. 2020) (finding ALJ "permissibly discounted a function report by [the plaintiff's] mother for germane reasons, i.e., on the ground that it is inconsistent with the objective medical evidence).

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED December 18, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[5] Plaintiff's final argument pertaining to the vocational expert relies on a finding that the ALJ erred in at least one of the areas addressed in this opinion. Given this court finds no error in the ALJ's opinion, this argument need not be addressed.